[Civ. No. 59825. Second Dist., Div. One. May 18, 1981.]

WOODCOURT II LIMITED, Cross-complainant and Appellant, v. McDONALD COMPANY et al., Cross-defendants and Respondents.

246

**COUNSEL**

Douglas B. Haynes for Cross-complainant and Appellant.

Mazirow, Schneider, Forer & Lawrence, Francis J. Cunningham III and Marc E. Rohatiner for Cross-defendants and Respondents.

---

OPINION

LILLIE, J.—Woodcourt II Limited, a defendant in an action brought by the McDonald Company, respondent herein, against Chalk Hills, Ltd. and others, appeals from order of dismissal of its cross-complaint against plaintiff McDonald entered on ruling sustaining its demurrer without leave to amend.

On July 7, 1978, the main action herein was filed by McDonald for injunctive relief, specific performance, decree quieting title to easement, accounting and damages naming Woodcourt, Chalk Hills, Ltd. and other defendants. The lawsuit arose out of a February 2, 1976, lease under which McDonald is the lessee and Chalk Hills the lessor. It provides that in the event Chalk Hills or any entity in which the principals of Chalk Hills have a controlling interest, acquires title to adjacent property, that entity shall grant McDonald an easement for installation of a sign. The easement would be necessary because the anticipated sign would encroach upon the adjacent property. Woodcourt II Limited is such an entity, and it purchased the adjacent property from Chalk Hills; Woodcourt and Chalk Hills refused to provide the easement called for in the lease.

Five days after the filing of the complaint and on July 12, 1978, McDonald caused to be recorded a notice of lis pendens (§ 409, Code Civ. Proc.) on the property owned by Woodcourt as well as property owned by defendant Chalk Hills.

On August 30, 1978, Woodcourt filed a motion to expunge lis pendens on the ground that McDonald's recordation against its property was in bad faith and the action did not affect title to or possession of the adjacent parcel.

On September 7, 1978, prior to hearing on its motion to expunge, Woodcourt conveyed 18 inches of its property to Chalk Hills. Woodcourt alleged in its cross-complaint that because of the recorded lis pendens it was having difficulty securing construction financing, and "in an effort to resolve the issue of the easement as raised in the principal

action, and to clearly establish that the principal action did not affect title to or right of possession of the real property described in the lis pendens, conveyed to defendant, Chalk Hills, Ltd., by Grant Deed dated and recorded on September 7, 1978, one-and-one-half feet (1-½') of [its] property.

Meanwhile Woodcourt filed its answer expressly denying that McDonald has any right to an easement over its property.

On hearing on motion to expunge lis pendens on September 19, 1978, Woodcourt maintained that the conveyance of that portion on which the promised easement existed destroyed McDonald's claim to any interest in its property, and McDonald must release the lis pendens. In opposition, McDonald argued that despite the conveyance, California law recognizes that incidental rights attach to any easement which extend beyond the express boundaries of the easement, and these incidental rights enable maintenance and repair of the easement thus its right to the easement still affected Woodcourt's property. On that day motion to expunge lis pendens was granted on condition that defendants file a $5,000 bond, and the preliminary injunction previously granted on August 4, 1978, be signed.[1] The order was made expressly without prejudice to McDonald's "re-recording of the lis pendens after recording of defendants' anticipated construction loan," ruling that the $5,000 bond would be adequate to protect McDonald's rights from date of expungement to re-recordation of the construction loan.

On September 6, 1979, Woodcourt filed against McDonald a cross-complaint the gravamen of which is the alleged wrongful recording and maintenance of the lis pendens in the main action. It alleged that such conduct constitutes abuse of process, slander of title and intentional interference with prospective economic and business advantage. On January 11, 1980, McDonald's demurrer to cross-complaint was sustained "per points and authorities of moving party and CCP 430.10(e), without leave to amend." The supporting points and authorities reflect that the ruling was based on grounds that a lis pendens is not a "process" and recordation of a lis pendens is absolutely privileged. Order of dismissal of cross-complaint was entered on the ruling.

---

[1]On August 4, 1978, McDonald's application for preliminary injunction was granted. The order signed on September 19, 1978, ordered Woodcourt and Chalk Hills to allow McDonald to construct and maintain a freeway sign and allow it reasonable access for the construction and maintenance of the sign.

Appellant contends that the privilege afforded by section 47, Civil Code is not applicable in the instant case because the cross-complaint alleged McDonald's recordation of lis pendens was not undertaken to achieve the objects of the litigation, lis pendens is a process, and denial of its motion to expunge has no bearing upon any cause of action pleaded.

■ The primary issue is whether the facts alleged in the cross-complaint show a legally recognized privilege; if they do, McDonald's conduct cannot be the basis of an action for abuse of process (*Twyford* v. *Twyford* (1976) 63 Cal.App.3d 916, 924, fn. 2 [134 Cal.Rptr. 145], citing *Younger* v. *Solomon* (1974) 38 Cal.App.3d 289, 300 [113 Cal.Rptr. 113]), slander of title (*Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 379 [295 P.2d 405]; *Sheets* v. *Superior Court* (1978) 86 Cal. App.3d 68, 70 [149 Cal.Rptr. 912]) or intentional interference with prospective business advantage (*Brody* v. *Montalbano* (1978) 87 Cal. App.3d 725, 738 [151 Cal.Rptr. 206]; *Lowell* v. *Mother's Cake & Cookie Co.* (1978) 79 Cal.App.3d 13, 20 [144 Cal.Rptr. 664]). Our courts have concluded that the privilege accorded by section 47, Civil Code, and the public policy of affording litigants the utmost freedom of access to the courts to secure their rights and defend without fear of being harassed by defamation actions underlying recognition of this privilege (*Kachig* v. *Boothe* (1971) 22 Cal.App.3d 626, 641 [99 Cal.Rptr. 393], citing *Albertson* v. *Raboff, supra,* 46 Cal.2d at p. 380) outweigh any public policy which might support appellant's position. (*Bradley* v. *Hartford Acc. & Indem. Co.* (1973) 30 Cal.App.3d 818, 823 [106 Cal.Rptr. 718].)

Subdivision 2 of section 47, Civil Code, states the long established rule that publications made in the course of a judicial proceeding are absolutely privileged,[2] and the issue here is whether a notice of lis pendens as authorized by section 409, Code of Civil Procedure is a publication in the course of a judicial proceeding. Controlling here is *Albertson* v. *Raboff* (1956) 46 Cal.2d 375 [295 P.2d 405]. In *Albertson* plaintiff sued for disparagement of title by virtue of recordation of a notice of lis pendens in bad faith by defendant in a prior action. In determining that recordation of lis pendens is absolutely privileged, the

[2]Under section 47, subdivision 2, Civil Code, a publication or broadcast is privileged only on certain occasions, namely, in (1) legislative, (2) judicial proceeding, or (3) in any other official proceeding authorized by law.

court pointed up the sole purpose of such recording—to give constructive notice of the pendency of the proceeding, that anyone with such notice who acquires an interest in the property does so subject to any judgment that may be rendered therein. A notice of lis pendens is purely incidental to the action wherein it is filed referring specifically to such action, and has no existence apart from it; in effect it is a republication of the proceedings, the publication of the pleadings is clothed with absolute privilege thus the republication thereof by recording a notice of lis pendens is similarly privileged. (P. 379.) The court held it was absolutely privileged. (P. 379.) Said the court at pages 380-381: "It is our opinion that the privilege applies to any publication, such as the recordation of a notice of *lis pendens*, that is required [citation] or permitted [citation] by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is invoked. [Citation.] . . . If the publication has a reasonable relation to the action and is permitted by law, the absolute privilege attaches. [Citations.] It therefore attaches to the recordation of a notice of *lis pendens*, for such a publication is permitted by law, and like other documents that may be filed in an action, it has a reasonable relation thereto . . . ." The Supreme Court in *Albertson* discussed at length the obvious purpose of section 47 to afford litigants the utmost freedom of access to the courts to secure and defend their rights without fear of being harassed by subsequent actions for defamation. "It would be anomalous to hold that a litigant is privileged to make a publication necessary to bring an action but that he can be sued for defamation if he lets anyone know that he has brought it [citation], particularly when he is expressly authorized by statute to let all the world know that he has brought it." (P. 380.)

Appellant concedes that there is no case in California contrary to *Albertson*, but urges us to "reevaluate" the Supreme Court decision. Relying primarily on *Twyford* v. *Twyford* (1976) 63 Cal.App.3d 916 [134 Cal.Rptr. 145], which appears to only indirectly address the issue, it contends that the privilege accorded by section 47 is not applicable because the cross-complaint alleges that recordation of the notice of pending action was not undertaken to achieve the objects of the litigation. *Twyford*, a suit for defamation, abuse of process and malicious prosecution, held that a request for admissions was absolutely privileged under section 47, Civil Code, using the elements set out in *Bradley* v. *Hartford Acc. & Indem. Co.* (1973) 30 Cal.App.3d 818, 825 [106

Cal.Rptr. 718].[3] Appellant argues that here too, the court must determine if notice of lis pendens meets those conditions. This has already been done for us by the California Supreme Court in *Albertson* v. *Raboff, supra*, 46 Cal.2d 375 which concluded that by its very nature lis pendens meets all of those requirements, and recordation of lis pendens is absolutely privileged even if made with actual malice. The court imposed no limitations or qualifications on the absolute privilege it accorded notice of lis pendens under section 47, Civil Code. In any case, on the record before the trial court, the legitimate relationship between the lis pendens and the main lawsuit is patently obvious.

*Albertson* v. *Raboff, supra*, was decided by the Supreme Court; the result in that case is unaffected by any change in statutory or case law and has been followed in *Sheets* v. *Superior Court* (1978) 86 Cal. App.3d 68 [149 Cal.Rptr. 912] holding that a notice of lis pendens is absolutely privileged and cannot be the basis of an action for slander of title. Citing *Albertson* v. *Raboff, supra*, 46 Cal.2d, page 379, the court in *Sheets* pointed out that since the lis pendens process is easily invoked and its use has been subject to criticism, remedial legislation was enacted in 1968 authorizing expungement of a notice wrongfully recorded or of a good notice on furnishing bond. (P. 70.) Thus defendant is not left without remedy because our statutes provide a comprehensive procedure by which it may seek to have the lis pendens expunged (§ 409.2, Code Civ. Proc.) and failing this, review by way of petition for writ of mandate in the appropriate appellate court. (§ 409.4, Code Civ. Proc.) If unsuccessful in this regard a lis pendens may be an element of an action for malicious prosecution in a proper case. (See *Albertson* v. *Raboff, supra*, 46 Cal.2d 375, 381; *Brody* v. *Montalbano* (1978) 87 Cal.App.3d 725, 736 [151 Cal.Rptr. 206].)

In connection with the first cause of action alleging abuse of process, we conclude for the reasons hereinafter set forth that recording notice of pending action does not constitute process in the sense that "abuse of process" is used. "'Process is a means whereby a court

---

[3]The court in *Bradley* v. *Hartford Acc. & Indem. Co.* (1973) 30 Cal.App.3d 818 [106 Cal.Rptr. 718] wherein actions for defamation arose out of publications made during and after pendency of a civil action, said at page 825: "that absolute privilege in judicial proceedings is afforded only if the following conditions have been met: the publication (1) was made in a judicial proceeding; (2) had some connection or logical relation to the action; (3) was made to achieve the objects of the litigation; and (4) involved litigants or other participants authorized by law."

compels a compliance with its demands.' [¶] Thus, the essence of the tort 'abuse of process' lies in the misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice. Since defendant took no action pursuant to authority of court, directly or by ancillary proceedings, no judicial process was abused." (*Meadows* v. *Bakersfield S. & L. Assn.* (1967) 250 Cal.App.2d 749, 753 [59 Cal.Rptr. 34].) The court in *Meadows* held that notice of default and publishing notice of trustee's sale do not constitute process in the sense that the term "abuse of process" is used in the law. (P. 753.) Faced with the query whether the trial court erred in directing a verdict in favor of plaintiffs on defendant's counterclaim seeking damages for abuse of process, the court in *Gray* v. *Kohlhase* (1972) 18 Ariz.App. 368 [502 P.2d 169] held, relying on *Meadows* v. *Bakersfield S. & L. Assn., supra*, 250 Cal.App.2d 749, that the filing of lis pendens does not constitute a "process" for the purpose of an action for abuse of process. (P. 172.)

Appellant concedes that it cannot point to one California authority to the contrary but submits that *Gray* v. *Kohlhase* was "clearly in error" urging that the courts of this state no longer should adhere to the "fiction" that notice of lis pendens only serves to impart notice of the underlying lawsuit to third parties dealing with property. It argues that notice of lis pendens falls within the broad interpretation of "process" given by the court in *Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 104, footnote 4 [101 Cal.Rptr. 745, 496 P.2d 817]. Appellant seeks to have us include recordation of lis pendens in the "entire range of 'process' incident to litigation." However, the court of yet another jurisdiction also recently defined lis pendens as but a notice, and held that filing of lis pendens notice cannot constitute the tort of "abuse of process" or slander of title because it is not a process. (*Bonnie Braes Farms, Inc.* v. *Robinson* (Ky.App. 1980) 598 S.W.2d 764.) In *Bonnie Brae Farms* plaintiff's suit was based on wrongful filing of lis pendens alleging abuse of process and slander of title. ■ Said the court at page 766: "Although appellant has attempted to prove a malicious purpose in the acts of the appellees, there has been no proof of process. . . . The lis pendens is merely a notice required by statute to protect the interests of any subsequent purchasers. It is filed without intervention of the judicial authority and brings neither the property nor any parties before the court. Since there is no process, there can be no abuse of process." The recording of a lis pendens does not require a party to take any affirmative action.

The order is affirmed.

Spencer, P. J., and Hanson (Thaxton), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 15, 1981.